IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOSIANE SOUZA DA SILVA SOARES, )
individually and as the Personal )
Representative of the Estate of ANTONIO )
PEREIRA SOARES, deceased, )
                 )
          Plaintiff, )
                 )
      v. )     C.A. No. K19C-12-028 NEP
                 )
CONTINENTAL MOTORS, INC., n/k/a )
CONTINENTAL AEROSPACE )
TECHNOLOGIES, a/k/a TECHNIFY )
MOTORS, a Delaware Corporation; )
TECHNIFY MOTORS, INC., a Delaware )
Corporation; and TECHNIFY MOTORS )
GmbH, a foreign corporation, )
                 )
          Defendants. )

Submitted:  October 8, 2021
Decided:  December 17, 2021

## OPINION AND ORDER

*Upon Defendants' Motion to Dismiss*
**DENIED**

Phillip T. Edwards, Esquire, and Lauren A. Cirrinicione, Esquire, Murphy & Landon, Wilmington, Delaware, *Attorneys for Plaintiff.*

Ricardo M. Martínez-Cid, Esquire, and Lea P. Bucciero, Esquire (argued), Podhurst Orseck, P.A., Miami, Florida, *Of Counsel for Plaintiff.*

Andrea S. Brooks, Esquire, Wilks Law, LLC, Wilmington, Delaware, *Attorney for Defendants.*

Sherri R. Ginger, Esquire, and Timothy A. Heisterhagen, Esquire (argued), Armbrecht Jackson LLP, Mobile, Alabama, *Of Counsel for Defendants.*

**Primos, J**.

This a is a products liability action arising from the crash of a Cessna 172S JT-A aircraft (hereinafter the "Aircraft") in Turks and Caicos Islands (hereinafter "TCI"), allegedly due to a faulty engine. Before this Court is a motion to dismiss filed jointly by two defendants, Continental Motors, Inc. (hereinafter "Continental") and Continental Aerospace Technologies GmbH[1] (hereinafter "GmbH") (hereinafter collectively "Defendants"), contending that dismissal is warranted if Delaware's choice-of-law analysis is performed. Because this Court finds that TCI is a fortuitous location of injury under such analysis, the Court's determination of the applicable law is not ripe for decision. Therefore, Defendants' Motion to Dismiss is **DENIED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

There are multiple parties in this case. As noted *supra*, Defendants are Continental and GmbH.[2] Continental is a Delaware corporation with its principal place of business in Alabama.[3] GmbH is a German corporation with its principal place of business in Germany, and it designed, manufactured, and tested the engine at issue.[4]

The plaintiff is Josiane Souza Da Silva Soares (hereinafter "Plaintiff"), the wife of decedent Antonia Pereira Soares (hereinafter "Decedent") and the Special Administrator of his estate.[5] Plaintiff has brought this action in a representative

---

[1] According to Defendants, Continental Aerospace Technologies GmbH was formerly known as Technify Motors GmbH—the name listed in Plaintiff's First Amended Complaint. Defs. Corr. Op. Br. in Supp. of Mt. to Dismiss at 1.

[2] Initially, there was a third defendant, Technify Motors (USA), Inc. (hereinafter "Technify USA"). However, in August 2018, Continental merged with Technify USA, and Technify USA was dissolved. First Am. Compl. ¶¶ 3, 17 (hereinafter "Compl. ____").

[3] Compl. ¶ 12.

[4] Compl. ¶ 18.

[5] Compl. ¶¶ 7, 11.

capacity on behalf of herself, Decedent's two children, and any other individual entitled to recovery by law.[6]

## B. Procedural History

Plaintiff filed her complaint in this Court on December 20, 2019. The action was removed to federal court on January 3, 2020, and was remanded to this Court on August 3, 2020, upon Plaintiff's motion.[7] On September 4, 2020, Defendants filed a motion to dismiss Plaintiff's original complaint on three separate grounds: 1) GmbH is not subject to personal jurisdiction in Delaware; 2) Plaintiff failed to serve GmbH within 120 days of filing the complaint; and 3) under Delaware's choice-of-law analysis, TCI's one-year statute of limitations (Fatal Accident Ordinance) is applicable and thus bars the case. In response, Plaintiff filed its First Amended Complaint, as of right,[8] on September 18, 2020.

Subsequently, Defendants filed a motion to dismiss the First Amended Complaint (hereinafter the "Complaint") on February 9, 2021,[9] reasserting all three original grounds for dismissal. However, on April 16, 2021, Defendants submitted a letter to the Court indicating that they were withdrawing the first two grounds of the motion, leaving only the third ground, *i.e.*, whether Plaintiff's claims are barred by TCI's statute of limitations.[10] The remaining ground for dismissal—unlike the other two grounds—is based upon Superior Court Civil Rule 12(b)(6).[11]

---

[6] Compl. ¶ 11.
[7] *See Soares v. Cont'l Motors, Inc*, 2020 WL 4437296, at *5 (D. Del. Aug. 3, 2020) ("Plaintiff's motion for remand is granted because the parties are non-diverse, and Defendants have failed to meet their burden to show the non-diverse party was fraudulently joined.").
[8] Super. Ct. Civ. R. 15(a).
[9] Defendants originally filed their motion on October 2, 2020, but re-filed the motion, along with their Corrected Opening Brief, on February 9, 2021.
[10] Defs.' April 16, 2021, Letter, at 1–2 (D.I. 110).
[11] A motion to dismiss based upon alleged lack of personal jurisdiction is filed pursuant to Superior Court Civil Rule 12(b)(2); a motion to dismiss based upon alleged failure of service is filed pursuant to Superior Court Civil Rule 12(b)(5).

Plaintiff responded in opposition to the motion on June 21, 2021. Defendants filed a reply brief on July 12, 2021. The Court held oral argument on September 17, 2021. On October 8, 2021, Defendants filed a written submission in response to additional authority that had been filed with the Court by Plaintiff shortly before the argument.

## C. Facts

At the time of the accident on December 23, 2017, Decedent was a passenger on board the Aircraft,[12] which had been newly built by the Cessna Aircraft Company at its facility in Kansas.[13] Following assembly of the Aircraft's body in Kansas, it had been transported to Continental's facility in Alabama for installation of the engine.[14] The engine had previously been manufactured and tested in Germany by GmbH.[15]

After installation of the engine, the Aircraft had been flown back to Kansas.[16] Subsequently, the Aircraft had been purchased by a Brazilian company, which had then hired a Brazilian pilot to ferry the Aircraft from Kansas to Sao Paulo, Brazil.[17] Decedent was an employee of the Brazilian company and was tasked with accompanying the pilot on the flight.[18] Decedent and the pilot were the only two individuals who undertook the trip.[19]

During the course of the flight, the Aircraft had to make ten planned stopovers to refuel given the Aircraft's size and flying range.[20] The Aircraft stopped at one of

---

[12] Compl. ¶ 52.
[13] Compl. ¶ 55.
[14] Compl. ¶ 56.
[15] Compl. ¶ 54.
[16] Compl. ¶ 57.
[17] Compl. ¶ 58.
[18] Compl. ¶ 59.
[19] Compl. ¶ 60.
[20] *See* Compl. ¶ 61 (stating that the flight was planned with ten stopovers, including Mississippi, Florida, TCI, and the Dominican Republic).

its planned stops, TCI, for one hour to refuel.[21] Shortly after takeoff from TCI, the Aircraft's engine failed and lost power.[22] A possible cause of the failure was "engine hose failure and/or detachment."[23] The pilot requested an immediate return to TCI's airport but was unable to land the Aircraft before it crashed.[24] Both Decedent and the pilot died.[25]

## II. STANDARD OF REVIEW

On a motion to dismiss pursuant to Superior Court Civil Rule 12(b)(6), the moving party bears the burden of demonstrating that "under no set of facts which could be proven in support of [the complaint] would the [plaintiff] be entitled to relief."[26] Upon this Court's review of a motion to dismiss, "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[27]

## III. PARTIES' CONTENTIONS

Defendants rely upon Delaware's Borrowing Statute, 10 *Del. C.* § 8121, which provides an exception to the general rule that the forum state's statute of

---

[21] Compl. ¶ 62.
[22] Compl. ¶ 63.
[23] Compl. ¶¶ 70,73.
[24] Compl. ¶ 64.
[25] Compl. ¶ 64.
[26] *Daisy Constr. Co. v. W.B. Venables & Sons, Inc.*, 2000 WL 145818, at *1 (Del. Super. Jan. 14, 2000).
[27] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (internal citations and quotations omitted); accord *Daisy Constr.*, 2000 WL 145818, at *1; *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005).

limitations applies.[28]   Delaware's Borrowing Statute (hereinafter the "Borrowing Statute") provides in relevant part:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of **whichever is shorter**, the time limited by the law of this State, or the time limited by the law of the state or country **where the cause of action arose**, for bringing an action upon such cause of action.[29]

This statute is designed to prevent a non-resident plaintiff from forum shopping.[30] Defendants contend that, utilizing Delaware's choice-of-law rules,[31] this cause of action "arose" in TCI.  Therefore, according to Defendants, TCI's one-year statute of limitations controls, given the Borrowing Statute's mandate to apply "whichever [time limit] is shorter."

To support this position, Defendants argue that TCI was not a fortuitous location of injury, and therefore that the presumption in the Restatement of Conflict of Laws—adopted by Delaware—that the law of the place of injury controls is not rebutted by any other jurisdiction's connections to the crash.[32]   During oral argument, Defendants conceded that they would need to conduct additional research

---

[28] *See Delargy v. Hartford Accident & Indem. Co.*, 1986 WL 11562, at *2 (Del. Super. Oct 8, 1986) ("The Delaware borrowing statute is an exception to the common law rule that the law of the forum governs in matters relating to the statute of limitations.").

[29] 10 *Del. C.* § 8121 (emphasis supplied).

[30] *Furnari v. Wallpang, Inc.*, 2014 WL 1678419, at *5 (Del. Super. Apr. 16, 2014); *see Saudi Basic Indus. Corp. v. Mobil Yanbu Oetrochemical Co., Inc.*, 866 A.2d 1, 16–17 (Del. 2005) ("Borrowing statutes such as Section 8121 are typically designed to address a specific kind of forum shopping scenario—cases where a plaintiff brings a claim in a Delaware court that (i) arises under the law of a jurisdiction other than Delaware and (ii) is barred by that jurisdiction's statute of limitations but would not be time-barred in Delaware, which has a longer statute of limitations. Under that 'standard scenario,' the borrowing statute operates to prevent the plaintiff from circumventing the shorter limitations period mandated by the jurisdiction where the cause of action arose.").

[31] Delaware uses the "most significant relationship" test, under the Restatement (Second) of Conflict of Laws § 145, to determine where the cause of action "arose." *Rahaman v. J.C. Penney Corp.*, 2016 WL 2616375, at *3–*5 (Del. Super. May 4, 2016)

[32] *See generally* Defs.' Corr. Op. Br. in Supp. of Mt. to Dismiss at 27-30; Defs.' Reply Br. in Supp. of Mt. to Dismiss at 3–6.

on other relevant jurisdictions' laws if this Court were to find that the location of injury was fortuitous.[33] However, Defendants maintained that the location of the crash was not fortuitous.[34]

In her briefs, Plaintiff originally argued that under the Borrowing Statute, the cause of action did not "arise" in TCI because TCI was a fortuitous location of injury, making its weight "less central" in Delaware's choice-of-law analysis.[35] With this in mind, Plaintiff contended that Delaware had a more significant relationship than TCI due to its being Continental's place of incorporation.[36] However, during oral argument, Plaintiff focused only incidentally on Delaware's relationship with the case. Instead, Plaintiff argued that because TCI was a fortuitous location of injury, the Court does not have enough factual information to determine what other jurisdiction's law is applicable, given that several jurisdictions have a more significant relationship with the case than TCI. In addition, Plaintiff contended that further discovery is needed to explore the connections between these other jurisdictions and the case, which would enable the Court to make a choice-of-law determination, if applicable.[37] Simultaneously, Plaintiff argued that, assuming the location of injury to be fortuitous, the Court may be left with a false conflicts analysis, as none of the competing jurisdictions have a conflict with Delaware as to their applicable statutes of limitations.[38]

---

[33] *See* Oral Arg. Tr. (Sept. 17, 2021) at 32 ("[T]he defendants would need to conduct additional research on Brazilian and German law.").

[34] *See id.* at 65 ("So this issue can be decided now and on the papers in front of Your Honor . . . . Again, the presumption is that TCI law applies.")

[35] Plaintiff argued that the fortuity of the location of injury, TCI, would negate any contention that Plaintiff's cause of action "arose" in TCI, rendering the Borrowing Statute ineffective in barring Plaintiff's claims. Pl.'s Br. in Opp'n. to Defs.' Mt. to Dismiss at 9.

[36] *See generally* Pl.'s Br. in Opp'n. to Defs.' Mt. to Dismiss at 23–24.

[37] *See* Oral Arg. Tr. at 57–58.

[38] *Id.* at 60–61 ("I also think it is unnecessary for Your Honor to make this decision because of the doctrine of . . . false conflicts, because . . . on this particular issue . . . which is statute of limitations, there is no different result in the application of any other jurisdiction's law.").

Based upon the briefs and the oral argument, the Court will make a determination as to fortuity of the location of the crash. However, as noted *supra,* a full-fledged choice-of-law analysis is not appropriate at this time.

## IV.  DISCUSSION

In analyzing choice-of-law issues, a Delaware court uses a two-part test to determine which jurisdiction's law applies.[39]  Initially, the court decides "whether there is an actual conflict of law between the proposed jurisdictions."[40]  If there is such a conflict, the court determines "which jurisdiction has the 'most significant relationship to the occurrence and the parties' based on the factors (termed 'contacts') listed in the Restatement (Second) of Conflict of Laws."[41]  The four contacts are as follows:

> (1) the place where the injury occurred;
> (2) the place where the conduct causing the injury occurred;
> (3) the domicil [sic], residence, nationality, place of incorporation and place of business of the parties; and
> (4) the place where the relationship, if any, between the parties is centered.[42]

It is important to note that the Restatement test is not merely a mathematical calculation.[43]  In other words, it "does not authorize a court to simply add up the interests on both sides of the equation and automatically apply the law of the jurisdiction meeting the highest number of contacts."[44]  Rather, the Court must consider the relevant facts pertaining to each issue in determining which contacts are most important.[45]

---

[39] *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1050 (Del. 2015).
[40] *Id.*
[41] *Id.*
[42] Restatement (Second) of Conflicts of Laws § 145(2) (1971).
[43] *Bell Helicopter*, 113 A.3d at 1050.
[44] *Id.* at 1050–51.
[45] *Id.* at 1051.

In addition to the four contacts, the Restatement provides that the following policy considerations are relevant in a choice-of-law analysis and include:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.[46]

These considerations are referred to as "§ 6 principles"[47] and can help to determine the jurisdiction with the most significant relationship.[48]

Here, the Court determines that Delaware and TCI law differ on the applicable statute of limitations, which finding is not disputed by the parties. Therefore, the Court reviews the relevant contacts contained in the Restatement.

## A. First Contact—Location of Injury

The first contact, location of injury, is often "determinative."[49] "[There is] a rebuttable presumption [in the Restatement] that the law of the place where the injury occurs should govern [the dispute.]"[50] In other words, the application of the law of the place of injury is a rebuttable presumption that can only be defeated with a

---

[46] Restatement (Second) of Conflict of Laws § 6 (1971).

[47] *Bell Helicopter*, 113 A.3d at 1051.

[48] *Id.*; *see* Restatement (Second) of Conflict of Laws § 6 cmt. c. ("At least some of the factors mentioned in this Subsection will point in different directions in all but the simplest case. Hence any rule of choice of law, like any other common law rule, represents an accommodation of conflicting values.").

[49] *Bell Helicopter*, 113 A.3d at 1053 (citing *Pallano v. AES Corp.*, 2011 WL 2803365, at *8 (Del. Super. July 15, 2011)); *see also Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009) ("[T]he law of the state where the injury occurred is presumed to control unless another state has a more significant relationship.").

[50] *Bell Helicopter*, 113 A.3d at 1052.

showing that another jurisdiction has a more significant relationship to the action.[51] The only time the presumption is "less central" is when "[t]he place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue."[52]

The Delaware Supreme Court has set forth two guiding principles in *Bell Helicopter Textron, Inc. v. Arteaga*[53] and *Ison v. E.I. DuPont de Nemours & Co*[54] for this Court to use in determining whether an aviation accident is fortuitous. First, fortuity cannot be found when victims are injured in their home countries.[55] Second, fortuity requires that the victims have no significant connection to the place of the crash.[56] One example of fortuity given in a footnote by *Bell Helicopter* explains that "[i]f a flight bound for London departed from New York on a U.S.-based carrier, but crashed in Greenland, the site of the accident could be considered 'fortuitous.'"[57] In other words, "[t]he use of the word 'fortuitous' in air crash cases stands for the

---

[51] *See Ison v. E.I. DuPont de Nemours & Co.*, 729 A.2d 832, 843–44 (Del. 1999) ("The plaintiffs correctly note that the application of the law of the place of injury is a rebuttable presumption that they can defeat with a showing that Delaware has a more significant relationship to the action.").

[52] *Bell Helicopter*, 113 A.3d at 1053 (quoting Restatement (Second) of Conflicts of Laws § 145 cmt. e.).

[53] 113 A.3d 1045 (Del. 2015).

[54] 729 A.2d 832 (Del. 1999).

[55] *See Bell Helicopter*, 113 A.2d at 1053–54 ("*Ison* noted that plaintiffs cannot invoke the fortuity concept when they were injured 'in their own home countries.' That is also the case here: all of the victims were Mexican citizens, who were traveling from one Mexican state to another for their jobs in Mexico." (citing *Ison*, 729 A.2d at 844)).

[56] *See Ison*, 729 A.2d at 844 ("Airplane accidents are an example of fortuitous injuries because the victim often has no connection to the place of the crash." (citing *Foster v. United States*, 11th Cir., 768 F.2d 1278, 1282 (1985) ("[A]s several courts have noted, in aircraft accident cases the place of the injury is almost always fortuitous and thus is not entitled to its usual weight in the choice-of-laws decision" (citations omitted)))); *Pallano,* 2011 WL 2803365, at *8 ("The place of injury is considered 'fortuitous' when there is no other significant contact with the site other than the injury itself." (citations omitted)).

[57] *Bell Helicopter*, 113 A.3d at 1053 n. 36.

proposition that an air crash could occur in any state over which a particular aircraft was scheduled to fly."[58]

Hence, airplane or helicopter accidents by themselves are not *per se* fortuitous.[59] For example, "[i]f an air crash occurs on landing or take-off, some courts find that additional contacts with the site of injury raise the significance of that relationship."[60] The question therefore for this Court to determine is whether there were "additional contacts" with TCI that would preclude a finding of fortuity.

### 1. The contacts found by the Supreme Court in *Bell Helicopter* are not present here.

Defendants take the position that because the Aircraft pilot chose TCI as a place to refuel, that affirmative choice makes the location not fortuitous.[61]  They point the Court to various cases, most notably to *Bell Helicopter.*  In *Bell Helicopter*, the Delaware Supreme Court found that a helicopter accident was not fortuitous because of a number of significant connections between the location of the crash— Mexico—and the victims: 1) two of the victims were citizens of the Mexican state of Veracruz, and all were citizens of Mexico; 2) all of the victims were traveling from one Mexican state to another for their jobs *in* Mexico; 3) the victims boarded

---

[58] *In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colo., on Nov. 15, 1987,* 720 F. Supp. 1445, 1452 n.14 (D. Colo. 1988).  *See also Rey v. Gen. Motors LLC*, 2021 WL 4786469, at *3 (W.D. Mo. Oct. 13, 2021) ("A fortuitous contact is one in which the plaintiff is injured in the jurisdiction while briefly passing through or passing over it (such as on a train or airplane trip) 'so that the place of the injury is inconsequential.'" (quoting *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1360 (8th Cir. 1994)); *In re Air Crash Disaster Near Chi., Ill. on May 25, 1979,* 644 F.2d 594, 615 (7th Cir. 1981) ("That the injury in our case occurred in Illinois can only be described as fortuitous. Had the DC-10's engine fallen off later, the injury might have occurred in any number of states.").

[59] Although *Ison* specifically mentioned airplane accidents as an example of fortuitous accidents, the Court in *Bell Helicopter* clarified that they were only "fortuitous" when the victim "has no connection to the place of the crash."  *Bell Helicopter*, 113 A.3d at 1053.

[60] *In re Air Crash Disaster at Stapleton,* 720 F. Supp. at 1452.

[61] In fact, the Complaint does not specify whether the pilot of some other individual or entity planned the locations of the refueling stopovers, but for purposes of this discussion, it will be assumed that the pilot did so, as that distinction makes no difference.

11

a helicopter in Mexico that had been "operating in Mexico since 1979 to take a journey that was supposed to end . . . in Mexico"; and 4) the victims both lived and worked in Mexico. This led the Supreme Court to find that "[t]here was nothing fortuitous about this [crash]."[62]

Unlike *Bell Helicopter,* where the lack of fortuity was due to a large number of contacts between the location of the crash and the victims, here, based upon the Complaint, the only connection between TCI and Decedent is that the pilot of the Aircraft in which Decedent was a passenger chose TCI as one of several spots to refuel. Unlike the connections found in *Bell Helicopter*, in this matter: 1) neither Decedent nor the other victim, the pilot, were from TCI; 2) Decedent was on the plane by direction of his employer, a Brazilian company (not a TCI company); 3) the flight during which the Aircraft failed was its *first* long flight, from Kansas to Brazil—where the Aircraft was purchased to be used—and neither the origin nor the destination of the Aircraft's journey was TCI; and 4) neither of the victims lived or worked in TCI. Therefore, none of the four connections present in *Bell Helicopter* are present in this case. Additionally, there is nothing in the Complaint suggesting that the defective condition of the engine or other potential cause of the crash can be tied to TCI.[63]

There is no factually similar case in Delaware determining that the contact created from the mere act of an aircraft's refueling en route to its final destination constitutes enough to overcome the generally fortuitous nature of aircraft crashes. However, in *Iskowitz v. Cessna Aircraft Co.*,[64] the federal district court in Colorado

---

[62] *Bell Helicopter*, 113 A.3d at 1054.

[63] *See generally* Compl. ¶¶ 7–99.

[64] 2009 WL 3162016 (D. Colo. Sept. 30, 2009). Defendants have asserted in their post-argument letter submission that *Iskowitz* "does not address the existence of the presumption in favor of applying the law of the place of the injury," thereby conflicting with Delaware's choice-of-law analysis. Defs.' Oct. 8, 2021, Letter, at 1 (D.I. 128). This is incorrect. *Iskowitz* was applying both Restatement 145 and § 6 principles, just as Delaware does. 2009 WL 3162016, at *3. As to the presumption, *Iskowitz* noted that "[i]n personal injury or wrongful death actions, the place of injury carries significant weight in the choice of law analysis." *Id.* Directly after this statement, *Iskowitz*

12

was faced with this question. In *Iskowitz*, the aircraft that crashed was flying from Virginia to California.[65] The aircraft was scheduled to land in Pueblo, Colorado, to refuel because it did "not have the range to complete a transcontinental flight without landing to refuel." Pueblo is often used for refueling transcontinental flights because it is near the center of the United States, and its small size permits efficient refueling operations.[66] The aircraft crashed while attempting to land at Pueblo during icy conditions.[67] The District Court held that refueling, along with icy conditions, "do[es] not tie the crash at issue" to the location of injury.[68] It based this on the fact that the airport was not "unique or nearly unique as an airport for refueling."[69]

Here, nothing in the pleadings suggests that TCI was "unique" as a place to refuel. The aircraft at issue was a smaller aircraft that, as in *Iskowitz*, had to land in multiple places to reach its final destination.

## 2. This case is distinguishable from Defendants' cited automobile travel cases.

Defendants argued in both their briefings and oral argument that this case can be equated to an automobile's driving through a state and getting off at an exit to refuel before continuing to the driver's desired destination. Defendants have cited two out-of-state cases in support of the proposition that where an accident occurs during travel through a jurisdiction, the law of that jurisdiction should apply: 1)

---

quoted the precise language from the Restatement giving rise to the presumption, as noted in *Bell Helicopter*, *i.e.*, "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless . . . some other state has a more significant relationship . . . to the occurrence and the parties . . . ."). *Id.* (quoting Restatement (Second) of Conflicts of Laws § 146 (1971)); *see Bell Helicopter*, 113 A.3d at 1053 n.31 (containing the identical language from the Restatement when referring to the presumption). Hence, the *Iskowitz* court was not only aware of the presumption but quoted the relevant language from the Restatement regarding it. However, it was less central to its analysis because, as will be noted *infra*, the court found that the location of injury was fortuitous.

[65] *Iskowitz*, 2009 WL 3162016, at *3.
[66] *Id.*
[67] *Id.*
[68] *Id.* at *4.
[69] *Id.*

*Lebegern* v. *Foreman*; [70] and 2) *Bishop v. Goodyear Tire*. [71]   The cited cases, however, are distinct from this matter.  The Court will consider each one in turn.

### a. *Lebegern v. Foreman*

In *Lebegern*, two individuals, the decedent and the surviving plaintiff, had taken a trip to New Jersey as "part of a planned shopping excursion." [72]   The Third Circuit determined that because of this planned excursion, "it cannot be considered a fortuity that [the decedent and the surviving plaintiff] found themselves on New Jersey's roadways," where the crash occurred." [73]

### b. *Bishop v. Goodyear Tire*

In *Bishop*, the plaintiff had been involved in an accident while driving a motorcycle on Interstate 90 in South Dakota. [74]  The plaintiff had three stops in South Dakota. [75]  The purpose of the plaintiff's travel into South Dakota—on the way to Wyoming—"was a week long [sic] motorcycle trip" to "experience" the Sturgis Motorcycle Rally. [76]

In weighing whether the accident was fortuitous, the District Court considered both the purpose of the stop in South Dakota and the conduct of the plaintiff. [77]  As to the purpose, the plaintiff had planned a stop in South Dakota with at least a night

---

[70] 471 F.3d 424 (3d Cir. 2006).

[71] 2016 WL 1389590 (D.S.D. Apr. 4, 2016).

[72] *Lebegern*, 471 F.3d at 433.

[73] *Id.* Defendants argue that the Third Circuit's statement in *Lebergern* that "[w]hen a person chooses to travel across state lines, he should expect the laws of the place in which he is located to govern his transactions," is determinative on this issue. *Id.*; Defs.' Reply Br. at 4–5.  However, the Third Circuit itself has found airplane crashes to be generally fortuitous in nature. *Blakesley v. Wolford*, 789 F.2d 236, 243 (3d Cir. 1986).

[74] *Bishop*, 2016 WL 1389590, at *3.

[75] *Id.*

[76] *Id.*

[77] *Id.*

of hotel accommodations in order to attend part of the Sturgis Rally.[78]  As to the conduct, the plaintiff was alleged to have "failed to properly maintain the tire and misused and abused the tire by failing to maintain proper air pressure and repeatedly operating the motorcycle in excess of the maximum load for the motorcycle and the tire."[79]  Taking into account both the contributory negligence leading up to the accident in South Dakota, and the purpose of the plaintiff's presence in South Dakota, the Court found that the location of injury was not fortuitous.  It did note, however, that "[i]f a plaintiff is injured while passing over a state while onboard an airplane, or while on an interstate journey on a bus passing through, it would constitute a fortuitous location."[80]

### c.  Distinguishable Nature of Both Cases

In *Lebegern*, the *final* destination of the decedent and surviving plaintiff's planned trip was New Jersey.  In *Bishop,* South Dakota was part of the plaintiff's travel plans, *i.e.*, it was a destination in and of itself for the plaintiff to "experience" the Sturgis event over multiple days.  In both cases, the reason for the plaintiffs' being in the respective locations at the time of the accidents was not purely to facilitate a means to continue to travel, *i.e.*, in neither case was a plaintiff merely stopping in a state to refuel. Thus, the Court finds that Lebegern and *Bishop* are distinguishable and hence not persuasive.

---

[78] *Id.* ("Mr. Bishop planned to spend a night or two at a hotel between Rapid City and Sturgis and planned to take in the Sturgis Motorcycle Rally.").

[79] *Id.* at *1; *see also id.* at *3 ("Additionally, the accident's location was not fortuitous because Mr. Bishop's treatment of the tire during his trip and leading up to the accident is significant.").

[80] *Id.*

15

### 3. The location of the injury is fortuitous based upon the Complaint.

The Supreme Court has directed this Court to focus on the victim's connection to the place of the crash in deciding fortuity.[81] Here, Decedent's connection to TCI, a refueling spot, was tenuous and served only as a means to an end, at least according to the Complaint. It would be inappropriate to find a non-fortuitous connection with the location of the crash based simply upon the Aircraft's inability to travel to its final destination without requiring fuel. There was no independent purpose, such as a "shopping excursion" or "experienc[ing] the Sturgis . . . Rally," that rendered the pilot's choice to refuel a connection rising beyond mere fortuity. In finding that the location of injury is fortuitous based upon the Complaint, the Court neither finds that TCI has no relationship with the crash[82] nor precludes a potential later finding that TCI bears the most significant relationship with the case. However, the Complaint provides insufficient detail for this Court to determine what additional contacts might have existed, such as any potential negligence of the pilot.[83]

An analysis of the three remaining contacts will confirm that, at least pursuant to the language of the Complaint, TCI has no connection to the occurrence and the

---

[81] *See Ison*, 729 A.2d at 844 ("Airplane accidents are an example of fortuitous injuries because the victim often has no connection to the place of the crash.").

[82] *See, e.g., In re Air Crash Disaster Near Chi.*, 644 F.2d at 615 ("But the fact that the interest of the place of injury is less than the interest of the principal place of business and the interest of the place of alleged misconduct does not mean that Illinois has no interest . . . . Illinois has very strong interests in not suffering air crash disasters and also in promoting airplane safety."); In *re Air Crash Disaster at Washington, D.C. on Jan. 13, 1982,* 559 F. Supp. 333, 349 (D.D.C. 1983) ("The fact that the site of injury might be fortuitous does not for every case answer the question of which state has the most significant relationship to this issue.").

[83] Defense counsel stated at oral argument that it is the "defendant's [sic] contention and the finding of the AIIB—the British entity that investigated the accident—that pilot error caused the accident". Oral Arg. Tr. at 24. The Court inquired of defense counsel how it could take such a finding into account if the Court is bound by the pleadings, which make no such assertion, and where there has been no request by either party that the Court convert this motion into one for summary judgment. *Id.* Defense counsel conceded, "Assuming we're bound by the pleadings, then the place where the conduct causing the injury occurred does not favor any one jurisdiction." *Id.* at 25.

parties other than its position as the location of the injury. The Court will continue that analysis *infra*, therefore, for that purpose—*i.e.*, demonstrating TCI's lack of connection to this case—as well as to provide guidance to the parties regarding the future conduct of this litigation by indicating what other jurisdictions may have closer connections to this case.[84]

To the extent, then, that the Court *infra* does not simply delineate TCI's *lack* of connection to the case, but the affirmative connections of other jurisdictions, the Court may be employing judicial *dictum*, *i.e.*, "statement[s] made deliberately after careful consideration and for future guidance in the conduct of litigation."[85] Any such judicial *dictum* should provide the parties direction on interests the Court deems significant for potential future choice-of-law determinations.

Finally, given TCI's lack of connection with the case pursuant to the Complaint, and further given the incomplete state of the record, the Court does not find that an analysis of the additional § 6 principles would be productive or useful at

---

[84] As noted *supra* when discussing the parties' contentions, the fortuity of the location of injury may well create a false conflict rendering a choice-of-law analysis, as to the statute of limitations issue, unnecessary, given that, at least according to Plaintiff, all of the other relevant jurisdictions have statutes of limitations as long as or longer than Delaware's. However, when sufficient facts are subsequently made part of the record, the question of which jurisdiction's laws apply may be important for other reasons, specifically with respect to additional legal issues essential to the resolution of this case. In this regard, the Court notes that "[c]hoice-of-law determinations must be made as to each issue when presented, not the case as a whole." *Laugelle v. Bell Helicopter Textron, Inc.*, 2013 WL 5460164, at *3 (Del. Super. Oct. 1, 2013) (citing Restatement (Second) of Conflicts of Laws § 145(1) ("The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . ."))).

[85] *Autobahn Imports, L.P. v. Jaguar Land Rover N. Am., L.L.C.*, 896 F.3d 340, 346 (5th Cir. 2018) (quoting *Lund v. Giauque*, 416 S.W.3d 122, 129 (Tex. App. 2013)). This is in contrast to *obiter dictum*, "a statement not necessary to the determination of the case and that is neither binding nor precedential." *Id.*; s*ee also Cates v. Cates*, 619 N.E.2d 715, 717 (Ill. 1993) (stating that judicial *dictum* is "entitled to much weight, and should be followed unless found to be erroneous"); *accord State v. Rainer*, 103 N.W.2d 389, 396 (Minn. 1960); *Stark v. Watson*, 359 P.2d 191, 196 (Okla. 1961); *Jamerson v. Heimgartner*, 372 P.3d 1236, 1241 (Kan. 2016); *Wild Meadows MHC, LLC v. Weidman*, 2020 WL 3889057, at *7 (Del. Super. July 10, 2020)*, aff'd*, 250 A.3d 751 (Del. 2021) (citing *Cates*, 619 N.E.2d at 717).

this time. In other words, such factors as the needs of the interstate and international systems and the relevant policies of other interested jurisdictions are not subject to useful analysis when the record remains undeveloped with regard to, *e.g.*, the causes of the crash and the potential negligence of both parties and non-parties. Therefore, the Court will leave consideration of those issues to another day, if necessary.

## B. Second Contact—Place Where Conduct Causing the Injury Occurred

When the place of injury is fortuitous, the place of the alleged misconduct should be given greater weight.[86] The place of the alleged misconduct could be either the place the negligent act that caused the engine to fail occurred or, in some cases, the place where the engine was marketed.[87]

The place of the alleged misconduct is where the engine was manufactured, tested, and installed. This gives weight to two different locations: first, the engine was manufactured, assembled, and tested in Germany; second, after being built, it was transferred to Continental's facility in Alabama, where the engine was installed. As to marketing, there are no facts in the pleadings beyond that the engine was marketed throughout the United States.[88]

In short, the second contact may weigh in favor of either Germany or Alabama. It may also weigh in favor of where the engine was marketed, depending upon whether it was marketed to any specific state more heavily than to others. The

---

[86] *Rasmussen v. Uniroyal Goodrich Tire Co.*, 1995 WL 945556, at *2 (Del. Super. Aug. 18, 1995); *accord In re Air Crash Disaster Near Chi.*, 644 F.2d at 615 ("Because the place of injury is much more fortuitous than the place of misconduct or the principal place of business, its interest in and ability to control behavior by deterrence or punishment, or to protect defendants from liability, is lower than that of the place of misconduct or principal place of business.").

[87] *See Bell Helicopter*, 113 A.3d at 1055 (Del. 2015) (noting that the "trend" is to look to the place where the product is marketed when analyzing the second contact); *Rasmussen*, 1995 WL 945556, at *2 ("Modern choice of law considerations suggest that the jurisdiction where a product is marketed has a greater interest than a jurisdiction where a product is manufactured, developed, or tested." (citing P. John Kozyris, *Choice of Law for Products Liability: Whither Ohio?,* 48 Ohio St. L.J. 377, 379–80 (1987))).

[88] Compl. ¶ 48.

Court notes that there is no indication in the Complaint of where the negligence took place or at what point during the manufacturing or installment process the defect arose.[89] The parties conceded at oral argument that discovery has started to paint a clearer picture as to this point,[90] but based upon the facts in the Complaint the Court cannot consider these issues further.

## C. Third Contact—Domicile, Incorporation, and Place of Business

In a previous opinion noted in *Bell Helicopter*, this Court found that the plaintiff's domicile can be critical in a choice-of-law analysis:

> Massachusetts, where the Pilot's loved ones experienced and still experience the economic difficulties, the pain, and the suffering his loss has visited upon them, and for which they seek some measure of recovery, holds the contacts far superior in this regard. It is there that the Laugelle Family lives with the consequences of the Pilot's demise.[91]

Here, there is no dispute that Decedent was a Brazilian citizen, and it appears from the pleadings that his family members live in Brazil with the consequences of his death.

As to the other parties, GmbH is incorporated in Germany with its principal place of business there. Continental is incorporated in Delaware with its principal place of business in Alabama.

---

[89] *Compare In re W.R. Grace & Co.,* 418 B.R. 511, 519 (D. Del. 2009) (holding that under Delaware's choice-of-law rules, the conduct causing the injury took place where the product was installed, not where the product was manufactured) *with Cervantes v. Bridgestone/Firestone N., Tire Co., LLC*, 2010 WL 431788, at *3 (Del. Super. Feb. 8, 2010) (holding that conduct causing injury took place where products were tested, designed, and manufactured).

[90] At oral argument, Plaintiff's counsel stated, "All the activity relating to the failed or disconnected hose on the engine would have occurred in the United States, **likely in Alabama we've come to learn,** but none of that happened in Turks and Caicos." Oral Arg. Tr. at 43 (emphasis supplied). At this stage, the Court cannot weigh the assertion "likely in Alabama," but it does note the insufficiency of evidence for a determination that requires a factually intensive analysis.

[91] *Laugelle*, 2013 WL 5460164, at *4.

The third contact, arguably, weighs in favor of Brazil, where Decedent's family is domiciled and suffers pain. However, there are also arguments in favor of 1) Germany, the place of incorporation and principal place of business of the manufacturer of the engine, 2) Delaware, the place of incorporation of the company that installed the engine into the plane and sold the plane to a Brazilian company, and 3) Alabama, the principal place of business for the Delaware corporation.

Germany has an interest in seeing companies domiciled in that country that manufacture dangerous products found liable.[92] Delaware has an interest in holding companies who choose to incorporate here liable for injuries that arise from their products.[93] Alabama has an interest in holding companies that maintain their principal places of business there responsible for selling defective and dangerous products.[94] Depending on what discovery reveals, the weight apportioned to each interest may change. For instance, if the manufacturing process was not a significant cause of the engine defect, then Germany's connection, as to the third contact, is lessened.

## D. Fourth Contact—Where the Relationship Between the Parties Is Centered

The center of the relationship is important only if "the injury was caused by an act done in the course of the relationship," and the relationship should be narrowly defined.[95] Here, based upon the Complaint, the only "relationship" between Plaintiff and Defendants was the fact that Plaintiff's Decedent was killed while a passenger

---

[92] *See In re Air Crash Disaster Near Chi.*, 644 F.2d at 613 ("MDC's wrongful conduct here complained of involved the design and manufacture of the DC-10. Because the corporate headquarters of MDC is located in Missouri, Missouri has an obvious interest in deterring wrongful conduct in such design and manufacture . . . . To find otherwise would be to gut the very concept of corporate accountability.").

[93] *See Cervantes*, 2010 WL 431788, at *3 (finding the place of incorporation to be particularly important where there are multiple places where the defective product was manufactured and sold).

[94] *See Ison*, 729 A.2d at 844 (finding that countries have a significant interest in setting the safety standards by which a product sold in their country will be judged).

[95] *Foster*, 768 F.2d at 1284 (quoting Restatement (Second) cmt. (e), p. 4).

in an airplane whose engine was manufactured, tested, and installed by one or both of the Defendants. Therefore, the fourth contact is neutral at this point.[96]

## V. CONCLUSION

Based upon the pleadings, this Court finds that TCI, as the location of the accident, is fortuitous and therefore "less central" to the choice-of-law analysis.[97] As stated *supra,* for this Court to determine which location has the most significant relationship with the occurrence and the parties, the Court must possess the facts necessary to analyze each contact. There may be additional facts bearing upon these contacts, some of which counsel referenced during oral argument and that may also

---

[96] *See Iskowitz*, 2009 WL 3162016, at *4 ("The parties had no relationship prior to the crash. . . . This factor carries no weight in the choice-of-law analysis."). In arguing that the fourth contact points to TCI, Defendants take out of context the observation of the Court in *Bell Helicopter*, in finding that the fourth contact in that case pointed to Mexico, that "the only relationship between the parties is the crash itself," as well as the Court's citation to a previous decision in an automobile collision case in which the Court had found that "the relationship [between the parties] was 'centered' where the collision took place." Defs.' Reply Br. in Supp. of Mt. to Dismiss at 8–9; *Bell Helicopter*, 113 A.3d at 1057 (citing *Turner v. Lipschultz*, 619 A.2d 912, 915 (Del. 1992)). In reaching these conclusions, the *Bell Helicopter* Court had *already* determined that the location of the accident (Mexico) was not fortuitous for the reasons discussed *supra*. Moreover, the *Bell Helicopter* Court specifically found that "the fourth contact points to Mexico, where the helicopter had been used since 1979, where the fitting was installed, and where the victims took off for their ill-fated journey." *Id.* No similar connections with TCI are present in this case: (1) the Aircraft was never used in TCI before the December 2017 crash; (2) the defective engine was installed in Alabama, not TCI; and (3) the victims began their journey in Kansas, not TCI. Finally, with regard to the *Turner* decision cited in *Bell Helicopter*, *supra*, it is apparent that with respect to an automobile collision in Delaware involving drivers from states other than Delaware, the only connection between those involved is the location of the collision. In this case, by contrast, where the crash was caused by a defectively installed or manufactured engine, the locations of the installation and manufacture of the engine (barring additional connections with the location of the crash, as in *Bell Helicopter*) take on greater significance.

[97] Even though this Court does find the place of the injury to be fortuitous based upon the pleadings, the location's fortuity may be worth reanalyzing depending upon whether there was negligence on the pilot's part, among other potential facts. *Cf. Bishop*, 2016 WL 1389590, at *3 (counting the contributory negligence of the plaintiff as weighty in its choice-of-law analysis); *see also In re Air Crash Disaster at Washington, D.C.*, 559 F. Supp. at 349 (considering the conduct of the "takeoff procedure" when discussing fortuity).

21

be revealed during further discovery, that the Court cannot consider in the context of the current motion. Based upon the allegations in the Complaint, however, it is clear that TCI does not have the "most significant relationship" with the occurrence and the parties.[98] Therefore, Defendants' Motion to Dismiss is **DENIED**.

  **IT IS SO ORDERED.**


            \_\_/s/ Noel Eason Primos_____
                Judge



NEP/wjs
*Via File & ServeXpress*
oc: Prothonotary
cc: Counsel of Record

---

[98] In addition, without the presumption favoring TCI, there may be a false conflicts analysis, as noted *supra*, given representations by Plaintiff's counsel at oral argument about the applicable statutes of limitations of other implicated jurisdictions. *See supra* note 38. This Court should avoid a choice-of-law analysis altogether where there is a "false conflict," because the result would be the same under the law of any of the competing jurisdictions. *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1161 (Del. 2010) (citations omitted). Moreover, it appears that Germany, Alabama, and Brazil, at a minimum, may have significant relationships with this incident, and the Court lacks the facts to determine which has the "most significant" relationship. *See Dow Chem. Co. v. Organik Kimya Holding A.S.*, 2018 WL 2382802, at *6 (Del. Ch. May 25, 2018) ("The 'most significant relationship' test entails a fact-intensive inquiry that often is inappropriate to a motion to dismiss. . . . It should be apparent that, at this stage of the litigation, the choice-of-law question cannot be answered." (citations omitted)); *see also, e.g.*, *Barrera v. Monsanto Co.*, 2016 WL 4938876, at *11 (Del. Super. Sept. 13, 2016) ("The parties have identified Michigan, New York, Texas and Missouri as jurisdictions that may prove relevant in the choice of law determination, but additional information to properly conduct a 'choice of law' analysis is required. . . . To date, the choice of law analysis has not been conducted and cannot be made on the limited facts and minimal record before it.").